IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ASHLEY HILL, etc., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0102-WS-B |
| | ) |
| TAI NHU TRAN, et al., | ) |
| | ) |
|     Defendants. | ) |

ORDER

This matter is before the Court on the plaintiff's motion for partial summary judgment and the defendants' motion for summary judgment. (Docs. 166, 167). The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 166, 168-69, 171-75), and the motions are ripe for resolution. After careful consideration, the Court concludes that both motions are due to be denied.

BACKGROUND

According to the amended complaint, (Doc. 56), the plaintiff's decedent ("Weaver"), while executing a left-hand turn from Highway 98 to First Street in Wilmer, Alabama, was struck by an 18-wheeler that was traveling the opposite way on Highway 98. The 18-wheeler was driven by the individual defendant ("Tran"), who was acting in the line and scope of his employment by the corporate defendant ("Enterprises"). Weaver experienced significant injuries, from which he expired.

The amended complaint alleges three claims against both defendants: negligence, recklessness/wantonness, and wrongful death. The amended complaint alleges two additional claims against Enterprises: negligent/wanton

entrustment and negligent/wanton hiring, training, retention and supervision.  The defendants seek summary judgment as to all claims.  The plaintiff seeks partial summary judgment only with respect to whether Tran was negligent.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial."  *Id*.; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); accord *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord*

*Imaging Business Machines, LLC v. BancTec, Inc.*, 459 F.3d 1186, 1190 (11th Cir. 2006); *Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599

---

[1] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."). "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

(11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

## I. Negligence.

The subject accident occurred at approximately 5:48 p.m., or thirteen minutes after sunset. The plaintiff argues that Tran was both negligent and negligent *per se* because his vehicle's headlights were not turned on at the time of the accident.

### A. Negligence *Per Se*.

"The doctrine of negligence per se or negligence as a matter of law arises from the premise that the legislature may enact a statute that replaces the common-law standard of the reasonably prudent person with an absolute, required standard of care." *Parker Building Services Co. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927, 930-31 (Ala. 2005). There is no Alabama statute that directly requires a motorist to use headlights thirteen minutes after sunset. Instead, "[e]very vehicle upon a highway within this state … shall display lighted lamps and illuminating devices … [f]rom a half hour after sunset to a half hour before sunrise." Ala. Code § 32-5-240(a)(1)a. Tran was not in violation of this provision, and the plaintiff does not rely on it.

Instead, the plaintiff points to a provision that "no person may operate a commercial motor vehicle in this state … in violation of the federal motor carrier safety regulations as prescribed by the U.S. Department of Transportation, 49 C.F.R. Part 107, Parts 171-180, Parts 382-384, and Parts 390-399 and as they may be amended in the future." Ala. Code § 32-9A-2(a)(1). The Court assumes without deciding that, if any of the cited regulations require commercial vehicles to employ headlights thirteen minutes after sunset, Tran "violated the statute [Section 32-9A-2(a)(1)]," *Parker Building Services*, 925 So. 2d at 931, for purposes of negligence *per se* analysis. The plaintiff, however, identifies no such

4

requirement in any of the cited regulations; the sole regulation she cites stands only for the unremarkable proposition that, if a regulation imposes a higher standard of care than does state law, the regulation must be complied with. 49 C.F.R. § 392.2.

Rather than cite a federal regulation the violation of which would violate Section 32-9A-2(a)(1), the plaintiff relies on the Alabama Commercial Driver's License Manual.[2] The manual states as follows:

> **When It's Hard to See**. At dawn, *dusk*, in rain, or snow, you need to make yourself easier to see. If you are having trouble seeing other vehicles, other drivers will have trouble seeing you. *Turn on your lights*. Use the headlights, not just the identification or clearance lights. Use the low beams; high beams can bother people in the daytime as well as at night.

(Doc. 166-5 at 6 (italics added)). Because "dusk" is defined in a state manual regarding traffic crash reports as "sunset to thirty minutes past sunset," (Doc. 166-6 at 3), the plaintiff concludes that headlights are required by the manual at any time after sunset.

According to the plaintiff, "[t]he Federal Motor Carrier Safety Administration Regulations, as adopted by the State of Alabama, promulgates [sic] the uniform commercial motor vehicle driver's manual as referenced herein above." (Doc. 174 at 4-5). Again, "the FMSCA publishes the Uniform Commercial Driver's Manual which is then adopted by the States." (*Id*. at 9). The plaintiff cites nothing to establish the provenance of the uniform manual. But even if it be accepted that the FMSCA drafted the uniform manual, and even if the agency's regulations require states to adopt the manual (a point the plaintiff fails to address), the manual is not a regulation. Thus, even if Tran was in violation of Alabama's version of the uniform manual, he was not on that account in violation of any of the regulations as to which Section 32-9A-2(a)(1) demands compliance.

---

[2] She relies as well on the California Commercial Driver Handbook but without explaining how that document could support an assertion of negligence or negligence *per se* under Alabama law for a collision occurring on Alabama roads.

5

His violation of the manual thus could not support an assertion of negligence *per se* under Alabama law.[3]

In the alternative, the plaintiff argues that Tran was negligent *per se* for violating a statute requiring use of headlights "[a]t any time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet." Ala. Code § 32-5-240(a)(1)c. The plaintiff relies on testimony from other motorists to establish there was not "sufficient light" for purposes of this provision. (Doc. 174 at 5, 11). The defendants counter with Tran's declaration that, at the time of the collision, "I could clearly see vehicles and objects at a distance of 500 feet." (Doc. 168-2 at 2). The plaintiff dismisses Tran's testimony as "self serving," (Doc. 174 at 11), but self-interest goes to credibility, not admissibility, and his statement establishes the existence of a genuine dispute as to this material fact.[4]

---

[3] If any of the regulations listed in Section 32-9A-2(a)(1) required commercial drivers to comply with the uniform manual and/or a state's version of it, a driver's violation of the manual might then be considered a violation of the regulation and thus a violation of Alabama law. The plaintiff, however, has neither advanced such an argument nor attempted the necessary showing.

Instead, without providing any citation, the plaintiff asserts that her expert has opined that federal regulations "required" Tran to have his headlights on at the time of the accident. (Doc. 166 at 5; Doc. 174 at 14). In fact, the section of the expert's report addressing headlights omits any reference to regulation and relies exclusively on "the standards of care in the industry." (Doc. 166-7 at 15-16).

[4] The defendants suggest that Tran's testimony negates negligence *per se*, apparently on the theory that only the driver can know exactly what the driver could see, so if the driver says he could clearly see vehicles and objects 500 feet away, it is irrelevant that other motorists at the same place and time say they could not. (Doc. 175 at 6). In a word, no. The testimony of the other witnesses draws into question the credibility of Tran's testimony, leaving a fact question that only a jury can resolve.

**B. Common-law Negligence.**

The only negligence identified by the plaintiff is the failure to employ headlights. (Doc. 174 at 7). According to the plaintiff, Tran has "admitted" he was negligent in this regard. (*Id*. at 11). She relies on the following exchange:

> Q. At this point can you think of anything that you could have done differently that would have prevented this accident?
> A. So in this accident, I turn my headlight on.

(Doc. 166-3 at 7).

"Negligence is the failure to do what a reasonably prudent person would have done under the same or similar circumstances, or the doing of something that a reasonably prudent person would not have done under the same or similar circumstances." *Ford Motor Co. v. Burdeshaw*, 661 So. 2d 236, 238 (Ala. 1995). Tran was not asked about, and did not address, the standard of care or his compliance with it. Rather, he was asked about, and addressed, causation only. Tran thus did not concede that he was negligent.[5]

As noted, whether a person acted negligently depends on what a reasonably prudent person would have done under the circumstances. In seeking summary judgment, both the plaintiff and the defendants depend on their respective chosen version of the circumstances – chiefly, the ambient light and the visibility of Tran's vehicle and other objects. The parties' evidence regarding these circumstances varies widely, and it is not uncontroverted. Thus, the plaintiff can obtain summary judgment only if, assuming there was as much light and visibility as the defendants' evidence depicts, as a matter of law a reasonably prudent person

---

[5] Elsewhere, the plaintiff notes that Tran agreed with the statement that, "at dusk you are required to use your headlights." (Doc. 174-1 at 38; Doc. 174 at 6, 18). The plaintiff does not offer this as an admission of negligence, and it is not, because the questioner failed to define "dusk" and so failed to establish that Tran was agreeing he was required to use headlights at the time of the accident. (The Court notes that an online authority states that "[t]he term *dusk* usually refers to **astronomical dusk**, or the darkest part of twilight before night begins." Wikipedia, https://en.wikipedia.org/wiki/Dusk (last visited March 24, 2017) (emphasis in original)).

would not have been driving without headlights.  Similarly, the defendants can obtain summary judgment only if, assuming it was as dark as the plaintiff's evidence depicts, as a matter of law a reasonably prudent person would have been driving without headlights.  Neither side has attempted to meet this difficult burden,[6] and thus neither is entitled to summary judgment on this issue.[7]

## II. Contributory Negligence.

The defendants argue that Weaver was contributorily negligent "because he failed to keep a proper lookout and failed to yield the right of way."  (Doc. 169 at 6).  The explicit assumption underlying the defendants' argument is that, because the motorist traveling behind Tran could see his vehicle, and because a motorist at an intersection perpendicular to Highway 98 could see Tran's vehicle as it passed, it is indisputable that Weaver saw (or, in the exercise of reasonable care, should have seen) Tran's vehicle as it approached him.

The defendants' proposed inference is insufficiently compelling to eliminate any question of fact.  The motorist behind Tran was traveling only three to four car lengths behind him and had his headlights on, directly illuminating the rear of Tran's vehicle during several miles of travel.  The stopped motorist was separated from Tran's vehicle by only the width of two lanes of traffic as it passed

---

[6] Instead, the plaintiff proposes that she automatically wins because she has offered an expert opinion that Tran was negligent while the defendants (assuming the Court excludes Officer Goff's opinions) have no countering expert opinion.  (Doc. 174 at 14).  Motions for summary judgment, however, are not decided based on which side presents the most experts.

[7] The Court has not considered the opinions of Officer Goff, since they are the subject of a pending motion in limine and since they would not entitle the defendants to summary judgment in any event.  Nor has the Court considered the portions of Walton's opinions to which the plaintiffs object, (Doc. 172 at 8-11), and they could not support summary judgment even if considered.  The Court has considered the videotapes and the conflicting testimony regarding the degree to which they accurately depict the ambient light and visibility at the key moment; it is for the jury to determine what weight to give the video evidence.

8

him, and this motorist as well had his headlights on, directly illuminating the side of Tran's vehicle as it passed. Weaver also had his headlights on, but he was in the left turn lane, not Tran's lane, so his lights would not have hit Tran's vehicle directly as did those of the other motorists. Moreover, Tran approached Weaver out of the more darkened east, and he was substantially further from Weaver than he was from the other motorists.[8] The expert opinion of Dr. Post, which the defendants ignore, further elucidates the difficulties in discerning approaching vehicles under the circumstances (including the ambient lighting and Tran's failure to use headlights) confronting Weaver. (Doc. 172-2 at 25-26).

The defendants insist this case is indistinguishable from *Serio v. Merrell, Inc.*, 941 So. 2d 960 (Ala. 2006), in which the Alabama Supreme Court affirmed a trial court ruling that the driver plaintiff was contributorily negligent as a matter of law when she entered an intersection in the path of a tractor-trailer that had the right of way, because she "could not have failed to see" the other vehicle had she kept a proper lookout. *Id*. at 965. In *Serio,* however, the accident occurred just after noon on a "clear and sunny" day where "visibility was good," *id*. at 963 – not, as here, in the gloaming. Moreover, the "other motorist" on which the defendant relied to show the 18-wheeler was visible from 100 to 150 yards away was sitting immediately behind the plaintiff at the intersection and so shared the same view – not, as here, in a removed location with different perspective. These critical differences prevent *Serio* from controlling here.[9]

---

[8] The defendants emphasize the calculation of their accident reconstruction expert that Weaver turned in front of Tran's vehicle when it was approximately 52 feet away from Weaver's vehicle. It appears that both of the other motorists were closer to Tran's vehicle than 52 feet. Moreover, Tran and Weaver were traveling towards each other at unknown speeds, so Tran was further from Weaver even a split-second earlier.

[9] The defendants rely also on the videotapes to show that Tran's vehicle was visible to Weaver, but the plaintiff's evidence creates a genuine dispute as to whether the tapes accurately reflect the ambient light and visibility at the time and place of the collision.

The defendants stress that "[t]here is no evidence that Weaver looked left and kept a proper lookout before he pulled out in front of Tran." (Doc. 169 at 8). Even if that is a correct statement, "[c]ontributory negligence is an affirmative defense[, and] the defendant bears the burden of proving [its elements]." *Serio*, 941 So. 2d at 964 (internal quotes omitted). One of those elements is Weaver's "fail[ure] to exercise reasonable care by placing himself in the way of danger." *Id*. As the party bearing the burden of proof at trial, on motion for summary judgment the defendants cannot simply point to an absence of evidence supporting the plaintiff but "must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Four Parcels*, 941 F.2d at 1438 (emphasis in original). As noted above, they have failed to do so.

The defendants suggest Weaver violated Section 32-5A-112(b) of the Alabama Code by not coming to a complete stop before turning. (Doc. 169 at 7; Doc. 175 at 3, 4). By its terms, this provision addresses the protocol only when "approaching a stop sign," and the defendants have identified no evidence that there is a stop sign on Highway 98 at First Street.

Finally, the defendants argue that, if Weaver did not see Tran's vehicle before he turned,[10] his headlights must not have been effective to a distance of 52 feet (their expert's estimate of the distance between the vehicles when Weaver turned). Because Alabama law requires headlights to reveal persons and vehicles at least 100 feet distant, Ala. Code § 32-5-242(b)(2), the defendants conclude Weaver was negligent *per se* in driving with inadequate headlights. (Doc. 169 at 8-9). Defective headlights may be a theoretical possibility, but the defendants have identified no evidence that Weaver's headlights were in fact inadequate to

---

[10] The plaintiff cites testimony from a relative that Weaver told him after the collision that he had never seen Tran's vehicle. (Doc. 174-1 at 23). The Court does not consider this evidence, as the plaintiff has not addressed the defendants' hearsay objection. (Doc. 175 at 2).

see 100 feet, much less established it as an uncontroverted fact. Moreover, the defendants ignore that the two vehicles were not stationary but traveling towards each other at unidentified speeds. A combined speed of only 40 miles per hour would shrink the distance between the vehicles by over 50 feet in less than one second, meaning Weaver's headlights could have worked to 100 feet and still not have picked up Tran's vehicle even a split-second before he turned. Nor have the defendants addressed each of the elements they must prove in order to establish contributory negligence *per se*,[11] and the Court will not do so on their behalf.

### III. Wantonness.

The defendants assert without explanation that the plaintiff "has failed to produced [sic] substantial evidence of any wanton conduct on behalf of the Defendants." (Doc. 169 at 11). As noted previously, "[e]ven after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark*, 929 F.2d at 608. While a movant need not always affirmatively negate an element of the non-movant's claim, it must at least "point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. The defendants point to nothing and therefore have not met their initial burden, requiring denial of their motion on that ground alone. Nor have the defendants endeavored to show that driving an 18-wheeler on a public highway, without headlights and under conditions as dark as the plaintiff's evidence describes, as a matter of law fails to rise to the level of wantonness as defined by Alabama law. *Cf. Inge v. Nelson*, 564 So. 2d 906, 907 (Ala. 1990) (driving without headlights "after sundown" and after drinking at least three beers "could be found to constitute both negligence and wantonness").[12]

---

[11] *See Serio*, 941 So. 2d at 964 (listing elements of contributory negligence); *Parker Building Services*, 925 So. 2d at 931 (listing elements of negligence *per se*).

[12] Because the defendants never met their initial burden, it is irrelevant that "Plaintiff failed to respond to Defendants' motion for summary judgment on the issue of

## IV. Respondeat Superior.

Enterprises argues that, because Tran did not behave negligently or wantonly, and because the plaintiff was contributorily negligent, Enterprises cannot be held liable under a theory of respondeat superior. (Doc. 169 at 12). Because questions of negligence, wantonness and contributory negligence are all for the jury, Enterprises is not entitled to summary judgment on this ground.

## V. Negligent/Wanton Entrustment/Employment.

As with wantonness, the defendants simply posit that "[t]here is no evidence that Tran was an incompetent driver" or that he "lacked training regarding the use of headlights." (Doc. 169 at 12). As with wantonness, the defendants point to no "materials on file" reflecting that the plaintiff cannot muster the necessary evidence for trial.[13] Thus, as with wantonness, the defendants' motion must be denied for failure to meet their initial burden. Nor have the defendants responded to the plaintiff's evidence regarding Tran's sparse training and history of moving violations. (Doc. 172 at 18-21).

---

wanton conduct by Tran." (Doc. 175 at 7). *Fitzpatrick*, 2 F.3d at 1116 ("If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made.").

[13] The typical way of doing so is to introduce discovery requests asking the non-movant to identify all evidence supporting a particular proposition and either the non-movant's response indicating that he has none or the movant's showing that the evidence the non-movant does identify is factually or legally insufficient to the purpose. It does not appear that the defendants conducted such discovery; that is their right, but they cannot transform their failure into a successful motion for summary judgment.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for partial summary judgment is **denied** and the defendants' motion for summary judgment is also **denied**.

DONE and ORDERED this 24th day of March, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
